

402 E. Southern Ave.
Tempe, AZ 85282
Telephone: (602) 888-9229
Facsimile: (480) 725-0087
D. Lamar Hawkins – 013251
JoAnn Falgout – 015052
Karen Bentley – 034148
E-Mail: lamar@guidant.law
E-Mail: joann.falgout@guidant.law
E-Mail: karen.bentley@guidant.law
Counsel for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| DIAMOND ELITE 6516 LLC, | Case No. 4:25-bk-00905-SHG |
| Debtor. | **PLAN OF REORGANIZATION** |

DIAMOND ELITE 6516 LLC (the "**Debtor**"), debtor-in-possession in the above-captioned bankruptcy estate, submits to the Court and creditors of the Debtor's estate the following Plan of Reorganization (the "**Plan**"), pursuant to Bankruptcy Code § 1121(a).

## I.     BACKGROUND

The Debtor is a real estate holding company with a single asset that is the real property located at 6516 North 7th Street, Phoenix, Arizona 85014 (the "**Property**"). The Property is a commercial property, zoned to allow mixed usage, and is currently worth at least $3.2 million.

When purchased in 2022, the Property was vacant and needed refurbishing and some remodeling. The Debtor had prepared a performance plan which included estimates of costs and a timeline for completing the construction.

Although the urgent nature of the COVID-19 pandemic crisis had passed and there were no longer widespread shutdowns of business operations when the Property was purchased, nevertheless, the Debtor encountered difficulty and was unable to complete the construction as quickly or as cost-effectively as planned, due to the pandemic's lingering effects on the construction industry, including but not limited to continuing supply chain delays and shortages and increased costs for materials, supplies, and labor. The Debtor had not anticipated that these delays, shortages, and increased costs would linger so long after the government-ordered shutdowns had expired.

Shortly after purchasing the Property, in an effort to bring in income and defray costs pending the renovations, the Debtor rented a small portion of the space to a grocer. Other than the grocer and a synagogue (which occupies some space on the second floor), the Property remains mostly vacant at this time. The grocer is unable to make much money given the small space that it has and thus does not pay much rent. Historically, it has paid enough to cover most of the utility costs at the Property. The total rent received each month is approximately $3,000.00, which provides enough income to cover most of the Property's operational expenses but not enough to also service the Loan.

The grocer would like to expand its operations and will pay substantially more rent when the expanded space is available and it is able to earn more profits, but it cannot expand until the renovations are completed. Additionally, once the renovations are complete, the Debtor has several additional potential tenants who are interested in leasing space. The Debtor believes, based on research and experience, that when fully renovated and leased, the Property will bring in approximately $40,000-$50,000 per month.

In March 2023, the Debtor borrowed funds to pay off the original purchase loan and to obtain additional funds to assist in paying for the renovations and construction for the expansion. The note is now held by BCIF Holdings 1 LLC (*see* Claim No. 1). The loan was structured to provide financing to pay off the prior loan and subsequent financing for construction, with a total loan amount of "up to" $3.22 million (*see* Loan Agreement, attached to proof of claim, .pdf p. 40). Funds allocated for the construction financing have

not been disbursed, and the amount owed to the lender is currently less than $2.5 million (*see* Claim No. 1).

The loan initially required interest-only payments on the amount actually disbursed but in December 2023, the payments increased substantially, and the loan documents state that interest must be paid based on the full authorized loan amount, even though the additional funds have not been disbursed. The Debtor borrowed funds on several occasions from a private lender (unsecured) beginning in early 2024 to cover payments due on the BCIF loan, construction costs, and operational expenses. Due to several factors, including the continuing construction delays, low to no profit margins, and the increase in the monthly payment amounts due, the Debtor was unable to make the payments beginning approximately in July 2024.

The Debtor has attempted to obtain another loan to pay off the Lender's loan and currently is in negotiations with a potential lender who has expressed interest and may be able to provide funds within the next three to six weeks.

Unfortunately, before the Debtor could arrange the new financing, BCIF issued a notice of Trustee's sale regarding the Property. Although the Trustee's sale notice was issued on October 31, 2024, the Debtor did not learn of it until mid-January 2025. The sale was scheduled to occur on February 3, 2025.

The Debtor's counsel attempted to reach the Trustee to ask that it postpone the sale to allow the Debtor some additional time to finalize the financing to pay off the BCIF loan, but was unable to reach the Trustee, so the Debtor was forced to file its bankruptcy petition to prevent the Trustee's sale, which would have led to a below-market-price sale and potentially even a deficiency claim against the Debtor.

BCIF has filed a motion seeking relief from the automatic stay [DE 32] and the Debtor has filed a response [DE 43]. Currently, the Debtor has a post-petition financing source ready to move forward and is working to negotiate a resolution with BCIF without the need for a court hearing to resolve the matter.

## II.  **DEFINITIONS**

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined have the meanings ascribed to them in Section II (this Section) of the Plan.

Any term used in the Plan that is not defined in the Plan but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules.  Terms and phrases, whether capitalized or not, that are not defined herein and not defined by the Bankruptcy Code or Bankruptcy Rules but that have been defined by motions and orders filed in this Chapter 11 case have the meaning ascribed to them in such motions and orders.

For purposes of this Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that it shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, Appendices, Schedules, and Exhibits are to the Sections, Articles, Appendices, Schedules, and Exhibits of or to the Plan; (d) the words "herein" or "hereto" refer to the Plan  in its entirety rather than to a particular portion of the Plan; (e) the headings and captions used in this Plan are for convenience and reference only and are not intended to be a part of or affect the interpretation of the Plan and shall not limit or otherwise affect the provisions hereof; (f) words denoting the singular number shall include the plural number and vice versa; (g) words denoting one gender shall include the other gender; and (h) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

As used in this Plan, the following terms have the meanings specified below:

Administrative Claim:  A Claim for payment of an administrative expense of a kind specified in 11 U.S.C. §§ 503(b) and/or 1114(e)(2) and entitled to priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, (a) the actual, necessary costs

4

and expenses, incurred after the Petition Date, of preserving the bankruptcy estate and operating the Debtor's business, (b) all Allowed Claims of professionals appointed by the Bankruptcy Court, (c) all fees and charges assessed against the bankruptcy estate under 28 U.S.C. § 1930, and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Bankruptcy Code § 546(c)(2).

ADOR: The Arizona Department of Revenue.

Allowed Claim: Allowed Claim shall mean a Claim with respect to which: (i)(a) a proof of claim has been filed with the Court within the applicable period of limitation fixed by Federal Rule of Bankruptcy Procedure 3003, or (b) was Scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), Rules of Bankruptcy Procedure, and not listed as disputed, contingent or unliquidated as to the amount; and (ii)(a) to which no objection to the allowance of the Claim has been filed by the Debtor or any other party, or (b) as to which the Court has allowed the claim after any such objection, by a Court order or judgment that is no longer subject to appeal and for which no appeal is pending.

Allowed Interest: An Allowed Interest shall mean an Interest in the Debtor held by a person or entity, as of the Effective Date, and as to which Interest no objection has been made within the time allowed for the making of objections, or as to which such Interest is allowed by a final order, or an Interest as to which a timely and proper proof of interest has been filed, and as to which proof of interest no objection has been made within the time allowed for making objections.

Allowed Priority Claim: The Allowed Claim of a Claimant that is entitled to priority in payment under 11 U.S.C. § 507(a)(2) through (a)(8).

Allowed Secured Claim: An Allowed Claim to the extent that such Allowed Claim is secured by a lien which is unavoidable, on property in which the estate has an interest, to the extent of the value of such Creditor's interest in the estate's interest in such property as determined in light of the purpose of the valuation and of the proposed disposition and use of such property and determined as of the Petition Date.

5

Allowed Unsecured Claim: An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the estate has an interest.

Ballot:  Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in this Plan in connection with the solicitation of acceptances of this Plan.

Bankruptcy Code: 11 U.S.C. § 101 et seq.

Bankruptcy Court: The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case.

Bankruptcy Rule:  Any Rule that is part of the Federal Rules of Bankruptcy Procedure as amended and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

Bar Date:  The date, if any, designated by the Bankruptcy Court as the last date for filing Proofs of Claims or Interests against the Debtor.

Chapter 11: Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, et seq.

Claim: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the date of Confirmation, or; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation, or; (c) a claim arising under 11 U.S.C. § 502(g).

Claimant or Creditor: Any person or entity that asserts a Claim.

Class:  A category of holders of Claims or Interests as described in this Plan.

Confirmation: The signing by the Court of the Confirmation Order.

Confirmation Date: The date upon which the Confirmation Order is entered upon the docket.

6

**Confirmation Hearing**: The hearing held by the Bankruptcy Court regarding confirmation of the Plan, as it may be continued from time to time.

**Confirmation Order**: The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 confirming this Plan.

**Contingent Claim**: Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

**Court**: The United States Bankruptcy Court for the District of Arizona, which has jurisdiction in this case.

**Debtor**: Diamond Elite 6516 LLC.

**Disclosure Statement**: The Debtor's disclosure statement and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

**Disputed Claim**: Any Claim that is not an Allowed Claim including but not limited to those Claims listed on the Schedules as unliquidated, disputed, or contingent and those claims to which an objection has been filed and said objection has not been resolved by a final order of the Bankruptcy Court.

**Effective Date**: The first business day after the first day of the month following the date that is 90 days after the entry of the Confirmation Order.

**Executory Contract**: Every unexpired lease and other contract that is subject to being assumed or rejected under the Bankruptcy Code.

**Excess Cash Flow**: Cash flow of the Debtor's post-petition income after deducting from its post-petition income all operating expenses, a reserve for operating capital, a reserve for capital replacements, capital improvements, depreciation, taxes, and all payments to administrative, priority, and secured creditors.

**Final Decree**: A final order that the Plan has been fully administered.

**Final Order**: An order or judgment which has not been stayed.

**Impaired**: When used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code § 1124.

Insider: A person or entity within the definition contained at Bankruptcy Code § 101(31).

Interest: Any equity interest in the Debtor as of the Effective Date.

Interest Holder: Any person or persons owning an Interest in the Debtor as of the Effective Date.

IRS: The Internal Revenue Service.

New Obligations: Those debts of the Debtor which existed preconfirmation, but which are modified by the confirmed Plan resulting in the creation of a new note. The obligations for which the Reorganized Debtor has liability under the terms of the confirmed Plan. Said new obligations shall not be considered in default unless and until the Reorganized Debtor defaults on said obligations after the Effective Date.

Person: Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

Petition: The original petition under Chapter 11.

Petition Date: The date on which the Debtor filed its Petition, February 3, 2025.

Plan: This Plan of Reorganization and any amendments or supplements thereto.

Proof of Claim: The proof of claim that must be filed by a holder of a Claim by the Bar Date.

Pro Rata: The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

Professional Fees: Any of the interim and final professional fees, costs, and expenses charged by the Chapter 11 professionals.

Reorganized Debtor: The Debtor after the Effective Date.

Undersecured: The term describing the Allowed Claim of a secured creditor when the value of the collateral securing said Allowed Claim is less than the debt which serves as the basis of said Allowed Claim.

Voting Deadline: The deadline for voting to accept or reject this Plan, as determined by the Bankruptcy Court.

8

## III.   CLASSIFICATION OF CLAIMS AND INTERESTS

### A.   No Classification of Administrative Claims and Priority Tax Claims

Pursuant to Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of the Plan, but rather, receive their statutory treatment, unless such Claimant consents to less favorable treatment.

#### 1.   Allowed Administrative Claims

Applications for approval of Administrative Claims must be filed with the Court, and copies must be served upon Debtor's counsel, unless exempted from such requirement. Any holder of an Administrative Claim that fails to timely file a final application for approval of such Administrative Claim shall be deemed to have waived its Claim, and the Claim will be disallowed.

#### 2.   Allowed Priority Tax Claim of the Internal Revenue Service ("IRS")

This Allowed Priority Tax Claim includes any Allowed Claim held by the IRS that qualifies as a Priority Tax Claim under Bankruptcy Code § 507(a)(8).  The IRS initially asserted a Priority Tax Claim but subsequently filed an amended proof of claim asserting only a general unsecured claim (See Claims Register – Claim 2-2).  The Debtor does not anticipate that the IRS will have a Priority Tax Claim, but in the event such a claim is filed and appropriate, the Debtor will make appropriate arrangements to pay it.  The Debtor shall remain current on filing its tax returns going forward and shall pay the obligations arising thereunder as incurred.

The IRS may collect unpaid liabilities that become due as a result of a default through the administrative collection provisions or judicial remedies as set forth in the  Internal Revenue Code.  The IRS shall not be required to seek a modification from the automatic stay to collect any tax liabilities from property that re-vests with the Debtor.

#### 3.   Allowed Priority Tax Claims of the Arizona Department of Revenue ("ADOR")

This Allowed Priority Tax Claim includes any Allowed Claim that qualifies as a Priority Tax Claim under Bankruptcy Code § 507(a)(8).  The ADOR initially asserted a priority tax claim but subsequently filed an amended proof of claim (see Claims Register –

9

Claim No. 3-2) asserting only a general unsecured claim. The Debtor does not anticipate that the ADOR will have a Priority Tax Claim, but in the event such a claim is filed and appropriate, the Debtor will make appropriate arrangements to pay it.

The Debtor may prepay all or any portion of any allowed priority claim. The Debtor shall remain current on filing its tax returns going forward and shall pay the obligations arising thereunder as incurred.

In the event of a default, the ADOR may exercise any and all rights and remedies under applicable non-bankruptcy law, which include, but are not limited to, state tax collection procedures and any other such relief as may be deemed appropriate by the Bankruptcy Court. The ADOR shall not be required to seek a modification from the automatic stay to collect any tax liabilities from property that revests with the Debtor.

**B.** **Classification of Claims and Interests that are Classified**

**1. Class 1 – Allowed Secured Claims**

Class 1 consists of the Allowed Secured Claim of BCIF Holdings I, LLC ("**BCIF**") related to its first position lien on the Property.

**2. Class 2 – Allowed Unsecured Claims of Creditors**

Class 2 consists of the Allowed Unsecured Claims of Creditors.

**3. Class 3 – Allowed Interests of the Debtor**

Class 3 consists of the Allowed Interests of the Debtor.

**IV.** **IMPAIRMENT OF CLASSES**

Classes 1-A, 2, and 3 are impaired under the Plan as that term is defined in Bankruptcy Code § 1124.

**V.** **TREATMENT OF CLASSES**

**A.** **Class 1 – Allowed Secured Claims**

**1. Class 1: BCIF**

Class 1 consists of the claim held by BCIF as to its secured interest in the Property. BCIF filed Proof of Claim No. 1 in the amount of $2,482,672.76.

The Debtor disputes some of the amounts that BCIF claims are owed and is working to negotiate a payoff amount to satisfy BCIF's claim. The Debtor will arrange for

10

post-petition financing to pay BCIF. If the Debtor is unable to obtain financing by September 5, 2025 (or such earlier date as it may agree upon with BCIF), it will list the Property for sale with a broker and all secured and priority claims will be paid from sale proceeds, and unsecured creditors will be paid their pro rata share of funds available after payment of secured, priority, and administrative claims.

Any adequate protection payments made by the Debtor during the bankruptcy proceeding shall apply to principal on BCIF's secured claim as of the Effective Date.

**B.** **Class 2 – Allowed Unsecured Claims of Creditors**

Class 2 consists of the Allowed Unsecured Claims of Creditors. The creditors with Allowed Unsecured Claims in Class 3 shall be paid in full from the post-petition financing to be obtained or, if the Property is sold, the creditors with Allowed Unsecured Claims in Class 3 will be paid in full (if sufficient funds are available) or shall be paid their pro rata share of the total amount of allowed unsecured claims, out of the net proceeds of the sale of the Property after all administrative, priority, and secured claims are paid in full.

**C.** **Class 3 – Allowed Interests of the Debtor**

Pursuant to Bankruptcy Code § 1129(a)(15) and (b)(2)(B)(ii), the Debtor shall retain its interest in all estate property, in consideration of its funding of the Allowed Claims from its post-petition operations. Allowed Interests shall receive a pro-rata distribution, based upon their interest percentage, after all costs of operations, and allowed administrative, priority, secured, and unsecured creditors are paid in full.

**VI.** **MEANS FOR EXECUTING THE PLAN**

**A.** **Business Operations and Projections**

The Debtor is continuing to operate to make payments to vendors and creditors. Additionally, Diamond Elite Estates, LLC, the Debtor's management company, is providing and will continue to provide funding as needed to make up operational shortfalls while this bankruptcy case is pending.

**B.** **Exemption from Transfer Taxes**

Pursuant to 1146(a) of the Bankruptcy Code, the creation or transfer of any mortgage, deed of trust or other security interest, the making or assignment of any lease or

11

sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, and executed in connection with the liquidation of assets shall not be subject to any stamp tax, real estate tax or similar tax.

C.   **Exemption from Securities Laws**

The creation of instruments, certificates, and other documents required to be issued or distributed pursuant to the Plan, (a) shall be authorized under 11 U.S.C. § 1145 as of the Effective Date without further act of action, and (b) shall be exempt pursuant to 11 U.S.C. § 1145 from registration under the Securities Act of 1933, as amended (and all rules and regulations promulgated thereunder), and under any state or local law (and all rules and regulations promulgated thereunder) requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.

D.   **Available Cash**

On or as soon as practicable following the Effective Date, the Debtor shall fund an account with any unencumbered cash. Thereafter, from time to time, upon receipt of any proceeds of the sale of the Debtor's assets, the Debtor shall deposit funds into the account to be distributed in accordance with the Plan.

E.   **Litigation**

Except as otherwise provided in the Plan, litigation, including without limitation, all causes of action, is retained and vested in the Debtor, and preserved pursuant to Bankruptcy Code § 1123(b).   From and after the Effective Date, all litigation will be prosecuted or settled by the Debtor.

F.   **Distribution Procedures**

The Debtor shall make distributions to holders of Allowed Claims as provided in this Plan. After payment in full of all Classes of Claims as provided herein, any additional funds shall be disbursed by the Debtor to the Interest Holders.

G.   **Withholding Taxes**

In connection with making Distributions under the Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such

12

withholding and reporting requirements. The Debtor may withhold the entire distribution to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any government unit within six (6) months after the date of first notification to the holder of the need for such information or the cash necessary to comply with any applicable withholding requirements, then such distribution shall be treated as an unclaimed distribution.

### H. Full and Final Satisfaction

Commencing upon the Effective Date, subject to the terms of the Plan, the Debtor shall be authorized and directed to distribute the amounts required under the Plan to holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all debts of the Debtor shall be deemed fixed and adjusted pursuant to the Plan, and the Debtor shall have no liability on account of any Claims or Interests except as set forth in the Plan. All payments and all distributions made by the Debtor under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Debtor.

### I. Documentation of Plan Implementation

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, it may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

### J. Funding and Operations

Pursuant to Bankruptcy Code § 1123(a)(8), the Debtor shall operate its business in the same manner and under the same structure as it has operated its business prior to

13

Confirmation, to provide for the funds to make the payments to creditors under its Plan of all or such portion of earnings from real estate transactions performed by the Debtor after the commencement of the case or other future operations of the Debtor, as is necessary for the execution of the Plan.

### K.    **Liquidation of Estate Property**

The Debtor shall have the authority to retain such brokers, agents, counsel, or representatives, as it deems necessary to operate and sell any assets of the bankruptcy estate. Prior to Confirmation, the Debtor may sell its property pursuant to an order of the Bankruptcy Court to the highest and best bidder. Any sales which occur post-confirmation shall not require approval of the Bankruptcy Court for the sale, although the Debtor will be free to seek such order if it deems appropriate.

### L.    **Management**

The Reorganized Debtor will continue to operate under the same management structure utilized prior to Confirmation.

### M.    **Documentation of Plan Implementation**

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. For any Creditor asserting a secured interest in any property of the Debtor, for which no equity exists in the property for the benefit of the Creditor, the Creditor shall immediately upon the Effective Date of the Plan release its asserted secured interest in the property. If the Debtor deems advisable, it may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## VII.    **EFFECT OF CONFIRMATION**

### A.    **Vesting of Assets**

14

Upon the Effective Date, pursuant to Bankruptcy Code § 1141(b) and (c), all Property of the Debtor and of the Estate shall vest in the Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise expressly provided in the Plan. All Liens, Claims, encumbrances, charges, and other interests shall be deemed fully released as of the Effective Date, except as otherwise provided in the Plan.

**B.**    **Exculpation and Release**

Pursuant to the Plan, the Debtor and all of its respective owners, partners, members, officers, directors, employees, advisors, attorneys and agents (collectively, the "**Exculpated Parties**") shall not have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns for any act or omission in connection with, relating to or arising out of this bankruptcy case, the preparation of and filing of the bankruptcy case, any settlement related to this bankruptcy case, the negotiation and execution of a proposed Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan, or the Property to be distributed under the Plan, except only to the extent that liability is based on gross negligence or willful misconduct. The Exculpated Parties shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan, or in the context of the bankruptcy case. Notwithstanding the foregoing, nothing in the Plan shall be deemed to release the Exculpated Parties or exculpate the Exculpated Parties with respect to their respective obligations or covenants arising pursuant to the Plan or with respect to Causes of Action for pre-petition conduct.

**C.**    **Discharge and Injunction**

Except as otherwise specifically provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims, and shall terminate all interests of any kind, nature, or description whatsoever against the Debtor or any of its assets or properties to the fullest extent permitted by Section 1141 of the Bankruptcy Code. Except as otherwise

15

specifically provided in the Plan or in the Confirmation Order, upon the Effective Date, all existing holders of Claims against the Debtor shall be precluded and enjoined from asserting against the Debtor, their respective successors or assignees, or any of their assets or properties, any other or further Claim or Interest based on any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date, whether or not the holder has filed a Proof of Claim and whether or not the facts or legal bases therefor were known or existed before the Effective Date.

Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise provided in the Plan, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any Affiliate of the holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date. Upon the Effective Date, all those Persons shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Interest in the Debtor. Except as otherwise expressly provided in the Plan, all persons or entities who have held, hold, or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives, and Affiliates, are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, or Property of the Debtor; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtor or against the Property or interests in Property of the Debtor; or (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or against the Property or interests in Property of the Debtor, with respect to any such Claim or Interest. This injunction shall extend to any successors or assignees of the Debtor and its respective Properties and interests in Properties.

### D.    Setoff and Recoupment

The Debtor may, but shall not be required to, setoff or recoup against any Claim and any distribution to be made on account of that Claim, any and all claims, rights, and Causes of Action of any nature that the Debtor may have against the holder of that Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver, abandonment, or release by the Debtor of any of those claims, rights, and Causes of Action that the Debtor may have against the holder of the Claim. To the extent the Debtor fails to setoff or recoup against a holder and seek to collect a claim from that holder after a distribution to the holder pursuant to the Plan, the Debtor shall be entitled to full recovery on its claim against that holder of a Claim.

The discharge shall be effective as of Confirmation as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

Any Claim of any Creditor that did not file a proof of claim by the claim bar date, shall be fully disallowed as of the Effective Date of the Plan, and such Creditor shall receive no distribution under the Plan and shall be forever barred from asserting a Claim of any sort against the Debtor.

In addition, any pre-confirmation obligations of the Debtor dealt with in this Plan shall be considered New Obligations of the Debtor, and these New Obligations shall not be considered in default unless and until the Debtor defaults on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor and, once the Plan is confirmed, the only obligations of the Debtor shall be such New Obligations as provided for under the Plan.

## VIII.   OBJECTIONS TO AND ESTIMATIONS OF CLAIMS

### A.    Deadline for Filing Applications for Administrative Expenses

There shall be no prohibition for a Claimant asserting an Unsecured Claim to also file an Application for Administrative Claim, given that the Plan contemplates payment in full

of all Allowed Claims. Applications for Administrative Claims for which the deadline has not already passed, shall be filed no later than 30 days after the Effective Date. If Administrative Claims are not timely filed in accordance with the Plan, they will be forever barred and may not be asserted in any manner; provided, however, that no request for payment shall be required with respect to Administrative Claims that have been previously paid.

**B.    Objections and Bar Date for Filing Objections**

As soon as practicable, but in no event later than 180 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the Debtor and the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules.

**C.    Settlement of Claims**

Settlement of any objection to a Claim not exceeding $10,000.00 shall be permitted on the eleventh (11th) day after notice of the settlement has been provided to the Debtor, the Creditors, the settling party, and other persons specifically requesting such notice, and if on such date there is no written objection filed, such settlement shall be deemed approved. In the event of a written objection to the settlement, the settlement must be approved by the Court on notice to the objecting party.

**D.    Estimation of Claims**

For purposes of making distributions provided for under the Plan, all Claims objected to shall be estimated by the Debtor at an amount equal to (i) the amount, if any, determined by the Court pursuant to §502(c) of the Bankruptcy Code as an estimate for distribution purposes; (ii) an amount agreed to between the Debtor and the Claimant; or, (iii) that amount set forth as an estimate in the Plan or Disclosure Statement. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.

**E.    Unclaimed Funds and Interest**

Distribution to Claimants shall be mailed by the Debtor to the Claimants at the address appearing on the master mailing matrix unless the Claimant provides the Debtor

with an alternative address. For a period of one year from the date that a distribution was to be made by the Debtor but has gone uncollected by the Claimant, the Debtor shall retain any distributions otherwise distributable hereunder which remain unclaimed or as to which the Debtor has not received documents required pursuant to the Plan. Thereafter, the unclaimed funds shall revest in the pool for distribution in the priority set forth in the Plan.

## IX. NONALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no other Allowed Claim, whether secured, unsecured, administrative, or priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest or other monetary charges relating to or arising from any default or breach by the Debtor, and any Claim on account thereof shall be deemed disallowed, whether or not an objection was filed to it.

## X. CLOSING OF CASE

After entry of the Confirmation Order and until entry of a Final Decree closing the bankruptcy case, the Debtor will be responsible for filing the post-confirmation reports required by the United States Trustee and shall pay any quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. § 1930, as amended. Pursuant to 11 U.S.C. § 1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date. After the Estate is fully administered, the Debtor may move to close the bankruptcy case by filing a motion pursuant to 11 U.S.C. § 350 seeking entry of a Final Decree.

## XI. MODIFICATION OF THE PLAN

In addition to the modification rights under Bankruptcy Code §1127, the Debtor may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Debtor may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of this Plan.

19

## XII.   <u>JURISDICTION OF THE COURT</u>

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the bankruptcy case for, among other things, the following purposes:

1.     The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtor to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's rights to object to or to re-examine the Claim in whole or in part.

2.     To hear and determine any motion, adversary proceeding, application, contested matter or other litigation matter pending on or commenced before or after the Confirmation Date.

3.     To determine any Claims which are disputed by the Debtor, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. § 502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determination on any objection to such Claim.

4.     To hear and determine all matters with respect to the classification, allowance, disallowance, liquidation, priority or estimation of any Claim.

5.     To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtor and any other party, including but not limited to, any rights of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

6.     The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

7.     The modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

20

8. To enforce and interpret the terms and conditions of this Plan.

9. The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

10. To hear and determine all applications for compensation and reimbursement of professional claims.

11. To issue injunctions, enter and implement other orders and take such other actions as may be necessary and appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

12. To hear and determine any rights, Claims, litigation, or Causes of Action held by or accruing to the Debtor pursuant to the Plan, Bankruptcy Code or pursuant to any federal or state statute or legal theory.

13. To hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code.

14. To enter a Final Decree.

## XIII.  RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to Bankruptcy Code § 1123(b)(3), the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor, except those claims specifically waived herein.

## XIV.  EXECUTORY CONTRACTS

The Debtor specifically assumes all insurance contracts.

The Debtor rejects all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court.  Claims for any executory contracts or unexpired leases rejected by the Debtor shall be filed no later than ten (10) days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected.  Any such Claims not timely filed and served shall be disallowed.

## XV.  MISCELLANEOUS

### A.  Governing Law

21

Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Arizona.

**B.** **Effect of Confirmation Order**

The Confirmation Order will include a provision that it shall be immediately effective and enforceable upon the Effective Date and shall not be subject to any stay under Bankruptcy Rule 3020(e) or otherwise.

DATED this 5th day of May, 2025.

GUIDANT LAW, PLC

By: /s/ JoAnn Falgout #015052
    D. Lamar Hawkins
    JoAnn Falgout
    Karen Bentley
    402 East Southern Avenue
    Tempe, AZ 85282
    Counsel for the Debtor

DIAMOND ELITE 6516 LLC

By: 
    Zev Rubin (May 5, 2025 13:57 EDT)
    Yehoishiah Rubin, President

E-FILED this 5th day of May, 2025 with the U.S. Bankruptcy Court and copies served via the Court's CM/ECF Notification System this day on all parties that have appeared in the case.

22